# FIRST AMENDMENT TO LEASE AGREEMENT

THIS FIRST AMENDMENT TO LEASE AGREEMENT (this "Amendment") is made and entered into effective as of October 30, 2015 (although not necessarily executed on such date), by and between **SOUTHERN METHODIST UNIVERSITY**, a Texas nonprofit corporation ("Lessor"), and **BETA SIGMA FACILITY CORPORATION OF KAPPA ALPHA THETA** (formerly known as Theta Educational Foundation of Southern Methodist University) ("Lessee").

## W I T N E S S E T H:

WHEREAS, Lessor and Lessee did heretofore make and enter into that certain lease agreement dated December 14, 1950, recorded April 3, 1951 as Instrument No. 40385 in the Deed Records of Dallas County, Texas (said lease agreement, together with any exhibits, supplements, addenda and attachments thereto, being herein collectively referred to as the "Lease"), which Lease set forth the terms and conditions of the lease and demise to Lessee of certain leased premises as described and defined in the Lease (but which leased premises are generally described as consisting of that certain parcel of real property located at 3108 University Boulevard, Dallas, Texas 75205 and more particularly described in Exhibit A attached hereto and incorporated by reference herein (the "Land") together with all rights, privileges, easements and appurtenances belonging or in any way pertaining to the Land, and any improvements presently on such Land); and

WHEREAS, Lessor, pursuant to a resolution of the Board of Trustees of Lessor passed on May 4, 2012, desires to enter into this Amendment; and

WHEREAS, Lessee has agreed to replace the existing improvements on the Land and cause to be erected upon the Land a sorority building of an approved approximate cost, including but not limited to Soft Costs (as such term is defined in that certain Loan Agreement (Construction) by and between Lessee and Lessee's lender, dated of even date herewith) of $9,250,000.00 (the "Approved Cost"), in accordance with the plans and specifications as are approved by Lessor in advance (the "Approved Improvements"); and

WHEREAS, Lessor has agreed to guarantee an amount not to exceed (i) the lesser of one half of the total cost of construction of the Approved Improvements or $4,625,000.00 of Lessee's construction indebtedness, or (ii) such higher amount not to exceed $5,125,000.00 as may be approved by the President or Vice President for Business and Finance, subject to the terms and conditions contained in this Amendment and the loan documents between Lessor and Lessee's lender (the "Guaranteed Indebtedness"); and

WHEREAS, Lessor and Lessee have agreed to certain modifications of the Lease as described hereinbelow, all upon and subject to the terms, limitations and conditions set forth in this Amendment; and

WHEREAS, Lessor and Lessee accordingly desire to amend the Lease upon the terms and provisions hereinafter set forth;

## **A G R E E M E N T:**

NOW, THEREFORE, for and in consideration of the above and foregoing premises and the mutual covenants and agreements set forth hereinbelow, together with other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each of the parties hereto, Lessor and Lessee do hereby agree that the Lease shall be and is hereby amended as follows:

1. <u>Defined Terms</u>. Terms defined in the Lease and delineated in this Amendment by initial capital letters shall have the same meanings ascribed thereto in the Lease, except to the extent that the meaning of any such term is specifically modified by the provisions of this Amendment. In addition, terms not defined in the Lease but defined in this Amendment will, when delineated with initial capital letters, have the meanings ascribed thereto in this Amendment. Terms and phrases which are not delineated in this Amendment by initial capital letters shall have the meanings commonly ascribed thereto.

2. <u>Guaranteed Indebtedness</u>. Lessor and Lessee hereby agree and acknowledge that the Guaranteed Indebtedness shall replace in its entirety all prior sums loaned by Lessor to Lessee pursuant to the Lease, all of which prior sums Lessor acknowledges have been repaid.

3. <u>Description of the Premises</u>. Notwithstanding anything to the contrary contained in the Lease, Lessee and Lessor hereby agree and acknowledge that the legal description of the leased premises shall be as set forth in <u>Exhibit A</u> attached to this Amendment.

4. <u>Insurance</u>. Notwithstanding anything to the contrary contained in the Lease, Lessee shall be subject to the following insurance requirements:

    a. At all times during the term of the Lease, Lessee shall maintain, at its sole cost and expense, a policy or policies of causes of loss special form (formerly, "all risks") property insurance (or comparable coverage by whatever name denominated) on all improvements located on the Land in an amount equal to not less than 100% of the replacement costs of the improvements against loss or damage by fire or other casualties. Such policy or policies shall be endorsed to provide that Lessee's insurance is primary in the event of any overlapping coverage with the insurance carried by Lessor (with any policies of Lessor being excess, secondary and noncontributing).

    b. During the construction of any Approved Improvements, the insurance required by subsection (a) above shall be in the form commonly known as "Builder's Risk" on an "all risk" basis including without limitation coverage against fire, lightning, wind damage, hail and collapse. The policy shall be obtained and maintained by Lessee or its general contractor in a form and amount not less than 100% of the replacement costs of the Approved Improvements. Coverage shall include all materials, supplies and equipment that are intended for specific installation in or on the Approved Improvements while such materials, supplies and equipment are located in or on the Land, in transit, or while temporarily located away from the Land for the purpose of repair, adjustment or storage at the risk of one of the insured parties.

c.  At all times during the term of the Lease, Lessee shall maintain, at its sole cost and expense, a policy or policies of causes of loss special form (formerly, "all risks") insurance (or comparable coverage by whatever name denominated) on all personal property (including removable trade fixtures, supplies and movable furniture and equipment) located on the Land and the improvements located on the Land, against loss or damage by fire or other casualties, in an amount equal to not less than 100% of the replacement costs of such personal property and endorsed to provide that Lessee's insurance is primary in the event of any overlapping coverage with the insurance carried by Lessor (with any policies of Lessor being excess, secondary and noncontributing).

d.  At all times during the term of the Lease, Lessee, at its sole cost and expense, shall maintain a policy or policies of the broadest available form of commercial general public liability insurance (utilizing the then ISO form or an equivalent form) covering the Land and the improvements and Lessee's use thereof against claims for personal or bodily injury or death or property damage (including contractual indemnity and liability coverage) occurring upon, in or about the Land and the improvements, with the premiums thereon fully paid on or before the due date, and such policies shall provide minimum limits of not less than $2,000,000.00 combined single limit primary coverage per occurrence of bodily injury, property damage, or combination thereof. Lessee shall cause such insurance policies: (i) to contain an endorsement that Lessee's insurance is primary and noncontributory for claims arising out of an incident or event occurring within the Land and the improvements (with any policies of Lessor being excess, secondary and noncontributing); and (ii) to (A) contain a provision naming Lessor and its trustees, officers, employees and agents as an additional insured using ISO Additional Insured Endorsements CG 20 10 10 01 (ongoing operations) and CG 20 37 10 01 (completed operations), or their equivalent; (B) apply as primary insurance with respect to any other insurance or self-insurance programs maintained by Lessor; and (C) include coverage for the contractual liability of Lessee to indemnify Lessor pursuant to the terms of the Lease.

e.  At all times during the term of the Lease, Lessee, at its sole cost and expense, shall maintain a policy or policies of workers' compensation insurance in an amount not less than that necessary to satisfy all statutory limits and other requirements of law concerning such workers' compensation coverage for Lessee's use and operations within the Land and any improvements. Such policy shall contain a waiver of subrogation endorsement reasonably acceptable to Lessor.

f.  Lessee shall furnish Lessor with binders or evidences of all insurance required by the Lease, in form reasonably satisfactory to Lessor, as a condition of the effectiveness of this Amendment. Whenever requested by Lessor, Lessee shall also reasonably satisfy Lessor that such insurance is in full force and effect and that Lessor is named thereunder as an additional insured or loss payee, as applicable. Copies of all renewals of all insurance policies maintained pursuant to the Lease shall be delivered to Lessor at least 15 days prior to the expiration dates of such policies.

g.  Lessee shall cause all insurance as required by the Lease to be procured from companies licensed to do business in the State having an A.M. Best Rating of "A VII" or better (or an equivalent rating if Best's ratings are substantially revised or

FIRST AMENDMENT TO LEASE AGREEMENT – Page 3

discontinued) and shall be in form and substance reasonably acceptable to Lessor. The deductible for any such coverage shall be determined by Lessee, subject to the prior written approval by Lessor which shall not be unreasonably withheld or delayed. All of such policies for property insurance shall provide for payment of the proceeds thereunder (with respect to claims for damage to the Land and the improvements on the Land) jointly to Lessor and Lessee, which proceeds shall be deposited by Lessor and Lessee into a separate segregated escrow account to be held in trust by an escrow agent approved by Lessor and Lessee (or Lessee's lender) (which approval shall not be unreasonably withheld or delayed), and to be disbursed and applied in accordance with this Amendment; provided, however, upon the request by Lessee to Lessor, Lessor, in Lessor's sole discretion, shall have the right to waive any such escrow requirements and in such event, the parties shall be entitled to take direct control over their insurance funds. All such policies shall contain a provision that they shall not be cancelled or materially modified (including any reduction in the scope or limits of coverage) without at least 30 days prior written notice to Lessor. If it becomes customary for properties in the Dallas, Texas area to have insurance with coverages other than, or increased coverages over, any of the insurance requirements described in this Amendment then, within 15 days after Lessor's reasonable request therefor, Lessee shall provide Lessor with satisfactory evidence of Lessee's obtaining and maintaining in place the insurance policy or policies so requested in order to provide such increased or other coverages (and which insurance policy or policies shall otherwise be in accordance with the terms and conditions of this Amendment).

   h.  If the Lease is terminated, all proceeds of insurance under property insurance policies covering the Land and the improvements on the Land, maintained by Lessee as required by the Lease, and all claims against insurers (with respect to damage to the Land and the improvements on the Land) shall thereafter be and become the sole and absolute property of Lessor, unless otherwise agreed upon by Lessor.

   i.  Notwithstanding any provision to the contrary contained herein, each party to the Lease hereby waives and releases any and every claim which arises or may arise in its favor and against the other party hereto and/or such party's officers, directors, trustees, employees and agents during the term or the Lease or any extension or renewal thereof for any and all loss of, or damage to, any of its property or any injuries to or death of any person (REGARDLESS OF WHETHER SUCH LOSS OR DAMAGE IS THE RESULT OF OR CAUSED BY THE NEGLIGENT ACTS OR OMISSIONS OF THE RELEASED PARTY OR ANY STRICT LIABILITY) which loss or damage is covered by valid insurance policies required under the Lease, to the extent that such loss or damage is recovered under said insurance policies. Said waivers shall be in addition to, and not in limitation or derogation of, any other waiver or release contained in the Lease with respect to any loss or damage to property of the parties to the Lease. Each party to the Lease hereby agrees immediately to give to each insurance company which has issued to it policies of property insurance written notice of the terms of said mutual waivers, if necessary, and to have said insurance policies properly endorsed, if necessary, to prevent the invalidation of said insurance coverages by reason of said waivers.

   5.  <u>Term of Lease</u>.  Upon the issuance of a certificate of occupancy by the City of University Park for the Approved Improvements, Lessor hereby agrees that the term of the Lease

FIRST AMENDMENT TO LEASE AGREEMENT – Page 4

shall be extended until December 31, 2059, provided that the Lease is not sooner terminated pursuant to the terms of the Lease.

6. <u>No Leasehold Mortgage</u>. Notwithstanding anything to the contrary contained in the Lease, Lessee hereby agrees and acknowledges that Lessee shall not make any assignment of the leasehold estate granted by the Lease or the improvements located on the Land.

7. <u>Taxes</u>. Notwithstanding anything to the contrary contained in the Lease, Lessee hereby agrees and acknowledges that Lessee shall pay all real property and personal property taxes (whether designated as ad valorem taxes or in some other manner and however calculated) and other taxes, assessments (general and special), impositions and other governmental charges, general and special, ordinary and extraordinary, of any kind or nature, which are assessed against or otherwise attributable to real property or personal property levied on or against the fee interest in the Land and any interest in the leased premises and/or the improvements located on the Land (whether assessed against Lessor or Lessee), before the same become delinquent, which during the term of the Lease may be assessed, levied, imposed upon, or arise from, or become due and payable out of or in respect of, or become a lien on, the fee interest in the Land and any interest in the leased premises or the improvements on the Land, or any part thereof or any appurtenance thereto.

8. <u>Mechanics Liens</u>. Lessor shall not be liable for any labor or materials furnished or to be furnished to Lessee upon credit, and no mechanic's or other lien for any such labor or materials ("<u>Mechanic's Liens</u>") shall attach to or affect the fee interest, or the reversion or other estate or interest of Lessor in and to, the Land or any improvements thereon. Lessee shall not permit any Mechanic's Liens to attach to the Land or any improvements thereon, and if any such Mechanic's Lien does so attach, Lessee will promptly pay such amount due; provided, however, Lessee may in good faith contest any such claims by appropriate administrative or judicial proceedings as long as:

    a. Lessee has a reasonable basis for such contest;

    b. Lessee pays, prior to the date any interest or penalties will attach thereto, any portion of any such claims that Lessee does not contest;

    c. Lessee's contest will not result in or pose any risk of the seizure or sale upon the Property or any portion thereof;

    d. Lessee at all times prosecutes such contest with due diligence; and

    e. Lessee pays, prior to the date any interest or penalties will attach thereto, the amount of the disputed claim that is determined by a court of competent jurisdiction to be due and owing by Lessee.

9. <u>Damage or Destruction</u>. Lessee hereby agrees and acknowledges that if all or any material part of the improvements located on the Land is destroyed or damaged by fire or other casualty, Lessee shall promptly deliver written notice thereof to Lessor and promptly clean the Land and restore the Land to a safe and "construction ready" condition. If all or any part of the improvements located on the Land shall be destroyed by fire or other casualty on or before the

FIRST AMENDMENT TO LEASE AGREEMENT – Page 5

date that is five years prior to the expiration of the Lease, and the Lease has not been terminated, the improvements shall be restored by Lessee, at its sole cost and expense, without unreasonable delay after the date on which claims made by Lessee under property insurance covering such fire and other casualty loss shall have been settled or otherwise resolved (and in any event within one year unless otherwise approved by Lessor, but in any event not longer than one and a half years after the event of fire or other casualty). Lessee shall in good faith diligently pursue all claims under such insurance. Any construction of improvements or additions or changes made in connection with restoration of the improvements located on the Land after fire or other casualty shall be completed by Lessee in a good and workmanlike manner and in accordance with all applicable Laws and in accordance with the Lease. The insurance proceeds shall be placed in the separate segregated escrow account as required by the Lease, shall be disbursed by the escrow agent thereof upon the delivery by Lessee to the escrow agent (with a copy to Lessor) of a certificate for payment signed by an executive officer of Lessee, which shall certify the amount of the disbursement requested and the amount of disbursements previously made from the escrow account and shall contain a certification that all such previous disbursements have been applied, and the current disbursement will be applied, to the direct and indirect costs of rebuilding, restoring and repairing that part of the improvements for which the insurance proceeds were payable and which shall be accompanied by one or more invoices from the general contractor supporting the requested disbursement. Prior to termination of the Lease, Lessee shall be entitled to adjust in good faith all claims made under any insurance policies obtained by Lessee by reason of loss of or damage to the Land or any improvements situated thereon subject to the prior written approval of Lessor which shall not be unreasonably withheld or delayed. If Lessee fails to rebuild, restore and repair the improvements in accordance with the Lease, then Lessor shall have the right to send Lessee a letter describing such failure and stating, in all caps and bold, that if such failure is not remedied by Lessee within 90 days after such letter is delivered to Lessee's address, or, if such failure cannot be remedied within such 90 day period, such longer period as may be reasonably required, so long as Lessee commences to remedy such failure within such 90 day period and thereafter diligently pursues such cure to completion, Lessor shall have the option to terminate the Lease. If Lessee fails to remedy such failure within the time provided above after delivery of such letter, Lessor, in Lessor's sole discretion, shall have the option to terminate the Lease. Upon any such termination of the Lease, Lessor shall then be entitled to the entire insurance proceeds payable under all policies of property insurance available to the insured because of such destruction or damage to the land or the improvements on the Land. Any funds held by the escrow agent at the time of the termination of the Lease shall become the property of Lessor and shall be promptly disbursed to Lessor by the escrow agent, except as otherwise agreed upon by Lessor. Notwithstanding the foregoing, if all or any part of the improvements located on the Land shall be destroyed by fire or other casualty after the date that is five years prior to the expiration of the Lease, the Lease shall automatically terminate, Lessor shall be entitled to adjust in good faith all claims made under any insurance policies obtained by Lessee by reason of loss of or damage to the Land or any improvements situated thereon, and Lessor shall be entitled to the entire insurance proceeds payable under all policies of insurance available to the insured because of such destruction or damage.

    10.    <u>Condemnation</u>. Lessee hereby agrees and acknowledges that if the entire or any substantial portion of the Land or the improvements located on the Land is subject to a taking for any public or quasi public use, by eminent domain proceedings, by a governmental authority or by an action in the nature of eminent domain (whether permanent or temporary) or the sale or

FIRST AMENDMENT TO LEASE AGREEMENT – Page 6

other transfer of all or a portion of the Land or the improvements located on the Land in lieu thereof which is sufficient to render the remaining portion unsuitable for restoration for Lessee's continued use thereof as permitted by the Lease, either Lessor or Lessee shall be entitled to terminate the Lease by sending written notice of such terminate to the other party.  Whether the portion taken is "substantial" and is "sufficient to render the remaining portion unsuitable for restoration for Lessee's continued use thereof as permitted the Lease" shall be determined by Lessor, in Lessor's sole discretion.  Any such termination of the Lease shall be without prejudice to the rights of either Lessor or Lessee to recover the award from the condemning authority for any loss or damage caused by such condemnation.  Neither Lessor nor Lessee shall have any right in or to any award made to the other by the condemning authority.  With respect to a taking of a portion of the Land or the improvements located on the Land that is not "sufficient to render the remaining portion unsuitable for restoration for Lessee's continued use thereof as permitted the Lease" (herein called "Partial Taking"), Lessee shall, at its sole cost and expense, promptly after such Partial Taking, commence and complete the restoration of the Land and the improvements as nearly as practicable to their value, condition and character, as existed immediately prior to such Partial Taking within one year after the final determination of the award with respect to such Partial Taking, provided Lessee is entitled to and receives an award for the value of the improvements taken in such Partial Taking in an amount reasonably sufficient to complete such restoration as determined in Lessee's reasonable discretion. If Lessee is not required to restore the improvements as provided in this Section 10, Lessee may terminate this Lease upon notice to Lessor.  No Partial Taking shall in itself have the effect of terminating the Lease.

11.   Lease Termination and Guaranteed Indebtedness.  Lessor and Lessee hereby agree and acknowledge that the following provisions shall replace the first paragraph on page three of the Lease in its entirety as follows:

a.   In the event of a Voluntary Termination (as defined below) of the Lease, all rights of Lessee pursuant to the Lease shall revert to Lessor, and Lessor shall pay to Lessee the Termination Value (hereinafter defined), which shall represent the depreciated value of the Approved Improvements (as they exist as of the date of such termination) as calculated in accordance with this paragraph (the "Approved Improvements Value").  The Approved Improvements Value is calculated based on the final cost of the project, not to exceed the Approved Cost (the "Total Costs"), reduced to account for various costs included therein from which the Lessor, in Lessor's sole judgment, does not benefit ("No-Benefit Costs"), including, but not limited to any of Lessee's fundraising costs and other improvements or personal property from which Lessor gains no benefit such as furniture or certain fixtures, in Lessor's sole discretion.  The "Termination Value", as used herein, is the Approved Improvements Value determined by depreciating and reducing the Approved Improvements Value over a 40-year period on a straight line basis with no remaining value at the end of that term.  The specific formulas are as follows:

**Approved Improvements Value = Total Costs – No-Benefit Costs**

**Termination Value = Approved Improvements Value –
([Approved Improvements Value/40]\*n)**

FIRST AMENDMENT TO LEASE AGREEMENT – Page 7

where n = the number of years that have passed since the date on which a certificate of occupancy by the City of University Park is issued for the Approved Improvements.

The Termination Value due and payable pursuant to this paragraph shall be reduced by the amount of the Guaranteed Indebtedness that is paid by Lessor to Lessee's lender as a result of such Voluntary Termination. Lessor shall first apply any payments made pursuant to this paragraph against liens or charges against the improvements and any balance due to Lessee shall be paid in cash to Lessee, its successors or assigns. As used in this Amendment, "Voluntary Termination" shall mean a termination of the Lease due to Lessee's voluntary cessation to function on behalf of the local SMU chapter of the Kappa Alpha Theta sorority (at which time this Lease shall automatically terminate except as otherwise agreed to in writing by Lessor), but expressly excluding any termination of the Lease due to a Lessee default pursuant to subpart (b) below.

      b.      In the event of any termination of the Lease due to a Lessee default under the Lease, all rights of Lessee pursuant to the Lease shall revert to Lessor, and Lessor shall pay to Lessee an amount equal to the lesser of either (a) the Termination Value or (b) the current outstanding principal balance of the loan (prior to any acceleration and expressly excluding any indebtedness related to SWAP or hedge agreement obligations of Lessee) that is partially secured by the Guaranteed Indebtedness. Any payments due and payable pursuant to this paragraph shall be reduced by the amount of the Guaranteed Indebtedness that is paid by Lessor to Lessee's lender as a result of such termination of the Lease. Lessor shall first apply any amounts due to Lessee pursuant to this paragraph against liens or charges against the improvements and any balance due to Lessee shall be paid in cash to Lessee, its successors or assigns. Once the indebtedness partially secured by the Guaranteed Indebtedness is paid in full, Lessor shall have no obligation to pay any amounts to Lessee upon the termination of the Lease due to a Lessee default under the Lease.

      c.      In the event of any termination of the Lease due to Involuntary Termination (as defined below) of the Lease, all rights of Lessee pursuant to the Lease shall revert to Lessor, and Lessor shall pay to Lessee the Termination Value. Any payments due and payable pursuant to this paragraph shall be reduced by the amount of (a) the Guaranteed Indebtedness that is paid by Lessor to Lessee's lender as a result of such Involuntary Termination of the Lease and (b) any amount of award paid to Lessee (or its lender) pursuant to Section 10 of this Amendment. Lessor shall first apply any amounts due to Lessee pursuant to this paragraph against liens or charges against the improvements and any balance due to Lessee shall be paid in cash to Lessee, its successors or assigns. Once the indebtedness partially secured by the Guaranteed Indebtedness is paid in full, Lessor shall have no obligation to pay any amounts to Lessee upon the termination of the Lease due to Involuntary Termination of the Lease. As used in this Amendment, "Involuntary Termination" shall mean a termination of the Lease (i) pursuant to Section 9 of this Amendment, (ii) pursuant to Section 10 of this Amendment, (iii) due to a change in law that prevents the use of the Land in accordance of the provisions of the Lease (at which time this Lease shall automatically terminate except as otherwise agreed to in writing by Lessor and Lessee), or (iv) for any other reason beyond

FIRST AMENDMENT TO LEASE AGREEMENT – Page 8

Lessee's control, but expressly excluding any termination of the Lease due to a Lessee default pursuant to subpart (b) above.

12.     <u>Rules, Restrictions and Terms of the Governing Authorities of Lessor</u>. Lessor and Lessee hereby agree and acknowledge that the following provision shall replace the second full paragraph on page two of the Lease in its entirety as follows:

> It is further stipulated and agreed that the leased premises and the improvements thereon shall be used strictly in accordance with the University Policies, rules, restrictions and terms of the governing authorities of the Lessor, and that the Lessor shall have the right to prescribe and impose additional restrictions and rules from time to time as the governing authorities of Lessor may deem proper to insure orderly conduct and proper discipline on the part of the Lessee or occupants of said premises and of persons holding under them, including the right on the part of the Lessor to prescribe health and sanitary regulations and to enforce payment for water, light, heat and other charges, including taxes, if any, and other such rules and regulations as the welfare of the University and the occupants of the improvements on the leased premises may reasonably demand in the judgment of the Lessor. Lessee agrees that the Lessor may but is not obligated to install video surveillance equipment on or near the leased premises (see University Policy 10.13).

13.     <u>Ratification</u>. Lessee and Lessor each hereby ratify and confirm their respective obligations under the Lease, and each further hereby confirms and ratifies that, as of the date of this Amendment, the Lease is and remains in good standing and in full force and effect.

14.     <u>Binding Effect; Governing Law</u>. This Amendment inures to the benefit of and shall be binding upon Lessor and Lessee and their respective successors and permitted assigns. This Amendment and the rights of the parties hereunder shall be governed by and construed in accordance with the laws of the State of Texas.

15.     <u>Miscellaneous</u>.  Except as specifically amended by the provisions of this Amendment, the terms and provisions stated in the Lease shall continue to govern the rights and obligations of Lessor and Lessee with respect to the matters that are the subject of the Lease; and all provisions and covenants of the Lease are and shall remain in full force and effect as stated therein, except to the extent specifically amended by the provisions of this Amendment. The Lease and this Amendment shall be construed as one instrument.  In that regard, the Lease and this Amendment, including all exhibits and addenda (if any) to each such document, constitute the entire agreement between the parties relative to the subject matter hereof and thereof and supersede all prior and contemporaneous agreements and understandings of Lessor and Lessee in connection therewith. Captions and headings throughout this Amendment are inserted only as a matter of convenience and are not to be given any effect whatsoever in construing this Amendment. Words of masculine, feminine or neuter gender as used in this Amendment shall mean and include the correlative words of the other genders, and words used in this Amendment importing a singular number shall mean and include the plural number and vice versa. All references in this Amendment to numbered paragraphs are references to the paragraphs of this Amendment, unless otherwise expressly designated in context.

FIRST AMENDMENT TO LEASE AGREEMENT – Page 9

16. <u>Multiple Counterparts</u>.  To facilitate execution of this Amendment, this Amendment may be executed in one or more counterparts as may be convenient or required.

17. <u>No Construction against Draftsman</u>.  No inference in favor of or against any party shall be drawn from the fact that such party has drafted any provision of this Amendment or that such provisions have been drafted on behalf of said party.

18. <u>Legal Description; Recording</u>.  The parties acknowledge that the parties agree to amend the legal description of the Land as described on <u>Exhibit A</u> to exclude the existing parking area and the adjacent sidewalk area. After Lessor receives the updated legal description and survey reasonably approved by Lessor and Lessee, Lessee hereby agrees to cooperate in a timely manner with Lessor to correct the legal description in <u>Exhibit A</u>.  Upon such amendment, a memorandum of this Amendment shall be recorded in the Deed Records of Dallas County, Texas.

[Remainder of Page Intentionally Left Blank.  Signature Pages Follow.]

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed effective as of the day and year first hereinabove written.

Lessor:

**SOUTHERN METHODIST UNIVERSITY**, a Texas nonprofit corporation

By: _____
Name: Dr. R. Gerald Turner
Title: President

Address:
Joanne Vogel
Vice President for Student Affairs, *ad interim*
Southern Methodist University
Perkins Administration Building
PO Box 750471
Dallas, Texas 75275-0471

With a copy to:

Office of Legal Affairs
Southern Methodist University
P.O. Box 750132
Dallas, Texas 75275-0132
Attention: Martha Fleisher

STATE OF TEXAS         §
                       §
COUNTY OF DALLAS       §

The foregoing instrument was acknowledged before me this 29 day of October, 2015, by Dr. R. Gerald Turner, as President of **SOUTHERN METHODIST UNIVERSITY**, a corporation, on behalf of said corporation.

[Notary Seal: ALYSSA MOONEY, Notary Public, State of Texas, My Commission Expires December 24, 2017]

My Commission Expires:

12/24/2017

_____
Notary Public, State of Texas

_____
Printed Name of Notary Public

FIRST AMENDMENT TO LEASE AGREEMENT – Signature Page

Lessee:

**BETA SIGMA FACILITY CORPORATION OF KAPPA ALPHA THETA,**
a Texas nonprofit corporation

By:_____
Name:_____
Title:_____

Address:   3108 University Boulevard, Dallas, Texas 75205

STATE OF TEXAS          §
                        §
COUNTY OF DALLAS        §

The foregoing instrument was acknowledged before me this \_\_\_\_\_ day of October, 2015, by _____, as _____ of **BETA SIGMA FACILITY CORPORATION OF KAPPA ALPHA THETA,** a Texas nonprofit corporation, on behalf of said corporation.

[S E A L]

My Commission Expires:

_____
Notary Public, State of Texas

_____
Printed Name of Notary Public

_____

FIRST AMENDMENT TO LEASE AGREEMENT – Signature Page

# EXHIBIT A

## Legal Description of the Leased Premises

Lot 1, Block A, SMU Sorority Place, a subdivision of parts of Tracts 2 and 3 of the Frances Daniel Partition and a re-plat of part of Block A of Berkley Addition to the City of University Park, Dallas County, Texas.

FIRST AMENDMENT TO LEASE AGREEMENT, Exhibit A – Solo Page

4842-7875-7670v.5 40296-68