THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JANE DOES 1, 2, 3, 4, 5, 6, 7, 8, and 9 and PARENT DOES 1, 2, 3, 4, and 5,<br><br>*Plaintiffs*,<br><br>v.<br><br>KAPPA ALPHA THETA FRATERNITY, INC. and BETA SIGMA CHAPTER of KAPPA ALPHA THETA FRATERNITY, INC., and BETA SIGMA FACILITY CORPORATION OF KAPPA ALPHA THETA FRATERNITY, INC.,<br><br>*Defendants*. | § § § § § § § § § § § § § § § § § | No. 3:22-cv-01782-M |

**PLAINTIFFS' INITIAL RESPONSE TO DEFENDANT FACILITY CORPORATION'S MOTION TO DISSOLVE TRO & MOTION FOR EMERGENCY HEARING**

Comes now Plaintiffs and file this initial response to Defendant Beta Sigma Facility Corporation's ("Defendant Facility Corporation") Motion to Dissolve TRO and Motion for Emergency Hearing.

1. Plaintiffs have made an initial analysis of Defendant Facility Corporation's Motion to Dissolve Temporary Restraining Order and Motion for Emergency Hearing ("Motion to Dissolve"). Plaintiffs vigorously oppose the Motion to Dissolve.

2. The Motion to Dissolve is surprising because when Plaintiffs conferenced with Defendant Facility Corporation's attorney, he <u>consented</u> to the TRO.

3. Plaintiffs believe the Motion to Dissolve can and should be dismissed summarily, for the reasons listed below. In the alternative, if this Court does not dismiss the Motion to Dissolve summarily, as required by the Federal Rules of Civil Procedure ("FRCP"), Plaintiffs ask this Court to enter a schedule for briefing and a hearing so the parties can fully brief the facts regarding the Motion to Dissolve, cite case law regarding the legal issues, and present evidence.

4. <u>If</u> this Court requires a response on the merits to be filed, Plaintiffs need time to file a detailed response on the merits and schedule witnesses, collect evidence, and prepare for a hearing.

5. Defendant Facility Corporation submitted an affidavit in support of its Motion to Dissolve today at 11:36 a.m. Plaintiffs' attorneys need time to confer with their clients some of whom are out of pocket to obtain counter affidavits and other evidence to rebut the evidence Defendant Facility Corporation submitted late last night and late this morning.

### The Motion to Dissolve Should be Summarily Dismissed Without a Hearing

6. The Motion to Dissolve is not permitted under the FRCP. Further, Defendant Facility Corporation failed to comply with the Northern District Local Rules.

7. First, the Motion to Dissolve is clearly and strictly not permitted by the rules. The FRCP permits a Motion to Dissolve <u>only</u> when the TRO was obtained <u>without notice</u>:

> **"Motion to Dissolve.** On two days after the notice to the party who obtained the order <u>without notice</u> -- or on shorter notice set by the court -- the adverse party may appear and move to dissolve or modify the order."

FRCP 65(B)(4) (emphasis added).

### FED. R. CIV. 65(b) is Inapplicable to Defendant's Motion to Dissolve

8. Defendant Facility Corporation's Motion to Dissolve is incorrectly premised on the argument that the motion is "as authorized by Federal Rule of Civil Procedure 65(b)(4)." Dkt. 14, p.1 (first sentence). Defendant misunderstands FED. R. CIV. P. 65(b)(4), which explains that a party adverse to a temporary restraining order can "appear" and request dissolution if "the order was obtained without notice."

### The TRO was not "Obtained" Without *Notice*; thus
### FED. R. CIV. 65(b) is Inapplicable to Defendant's Motion to Dissolve

9. FED. R. CIV. P. 65(b)(1) explains that courts "may issue a temporary restraining order without written or oral notice to the adverse party . . ."

10. When an adverse party does not receive notice, it can later "appear" and ask the court to dissolve a temporary restraining order that was obtained "without notice" to that adverse party. FED. R. CIV. P. 65(b)(4).[1]

11. Defendant Facility Corporation vaguely, and incorrectly, argues FED. R. CIV. P. 65(b)(4) applies "in circumstances such as this." Dkt. 14 at ¶9.

12. Defendant Facility Corporation's intentional vagueness was necessary because any specificity dooms its motion.

13. Here, the Federal TRO Extension was not "obtained" without notice to Defendant Facility Corporation.

   a. July 27, 2022: all the parties appeared at the hearing on Plaintiffs' request to enter temporary restraining order. Dkt. 5-1 at App. 0006.

   b. July 29: all the parties appeared at the hearing Plaintiffs' request for expedited relief and there was also argument about Plaintiffs' request to enter temporary restraining order. *See* Dkt. 5-1 at App. 004.

   c. July 29: the parties signed and submitted an agreed-upon TRO to the state court. *See* Ex. "A" (Defendant Theta submitted to the state court).

   d. July 31: the state court TRO was signed on July 31, 2022. Dkt. 1-5 at p. 229-33.

14. During the state court action, Defendant Facility Corporation's attorney admitted

---

[1] (1) *Issuing Without Notice.* The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney ...

(4) "Motion to Dissolve. On 2 days' notice to the party who obtained the order without notice--or on shorter notice set by the court--the adverse party may appear and move to dissolve or modify the order. The court must then hear and decide the motion as promptly as justice requires."

FED. R. CIV. P. 65(b)(1)(4).

Injunctive Relief should be granted under the circumstances.

15. After the Order granting the TRO was reduced to writing, was circulated, and attorneys made edits to the order. After the order granting the state court TRO was finalized, counsel for Defendant Facility Corporation agreed to said order. Indeed, Defendant Facility Corporation signed that obtained TRO as "Agreed To Form and **Substance**." Dkt. 1-5 at p. 233 (emphasis added).[2] Thus, Defendant Facility Corporation's Motion to Dissolve should be summarily denied.

**Also, or Alternatively, the Order *Extending* the TRO was *not* Without Notice; thus FRCP 65(b) is Inapplicable to Defendant's Motion to Dissolve**

16. Under the federal rules, an adverse party can ask the court to dissolve a temporary restraining order that was obtained "without notice" to that adverse party. FED. R. CIV. P. 65(b)(4).

17. Courts are clear that parties that have notice before entry of a temporary restraining order can not utilize FED. R. CIV. P. 65(b)(4). Courts explain that:

> "[w]hile Rule 65 does not specify what exactly constitutes notice, courts have ruled that notice under Rule 65 does not require service of process, and that it is in the trial court's discretion to determine the sufficiency of the written or oral notice to the adverse party."

*Alamo Area Mut. Hous. Ass'n, Inc. v. Lazenby*, No. 5:17-CV-634-DAE, 2017 WL 7052289, at *5 (W.D. Tex. July 19, 2017).

18. In *Alamo Area*, the court held that notice had been provided to the adverse party because the movant had provided letters and oral correspondence to the adverse party before the temporary restraining order was issued. Thus, "Defendant has notice of Plaintiff's motion, and the 'without notice' technical provisions of Rule 65(b) are inapplicable." *Id.* (citing *King Aerospace Commercial Corp., Inc. v. Al-Anwa Aviation*, No. 3:08-CV-0999-L, 2008 WL 2676362, at *8 (N.D. Tex. July 9, 2008)) (holding that the technical duration requirements of Rule 65 did not apply to a temporary

---

[2] The other parties signed the TRO as "AGREED AS TO FORM ONLY." Dkt. 1-5 at p. 233.

restraining order because the parties had notice).

19. Here, there is no dispute that Defendant Facility Corporation had notice this case was removed to this Court only two days before a temporary injunction hearing that Defendant Facility Corporation was scheduled to attend. *See e.g.*, Ex. "B" (ECF notice of the removal at Dkt. 1).

20. There is no dispute that Defendant Facility Corporation had notice that Plaintiffs asked the Court to extend the TRO. *See e.g.*, Ex. "A" Plaintiffs' Partially Opposed Motion to Modify Temporary Restraining Order (ECF notice of the Motion to Extend the TRO at Dkt. 7-9) (Plaintiffs' "Motion to Extend the TRO").

21. The new attorney for Defendant Facility Corporation filed its Motion to Dissolve in violation of local rules requiring that he conference with opposing counsel regarding said Motion before filing said Motion. N.D. Rule LR 7.1(h). ("NOTE: If a motion is not listed, a brief and certificate of conference are required") (emphasis added). Defendant Facility Corporation's new lawyer failed to conference.

22. The new attorney for Defendant Facility Corporation failed to file a brief in support of the Motion to Dissolve with in violation of N.D. Rule LR 7.1(h).

### Defendant Facility Corporation Agreed to Both the State Court TRO and Federal Court TRO Extension

23. The time for Defendant Facility Corporation to object to the TROs was when Defendant Facility Corporation had notice and opportunity to object or respond to those TROs. *Defendant Facility Corporation* made the choice to agree and consent to both of those TROs. Its last minute about face totally changing its position is nothing more than a procedural squeeze play tactic to derail important injunctive relief that two courts have granted.

24. The bottom line is that Defendants knew that on August 17 the state court judge was going to grant a temporary injunction continuing the TRO relief. Therefore, Defendant Theta

improperly removed this case at 11:30 a.m. on August 15 to defeat the purpose of the TRO and deny Plaintiffs their day in Court and the opportunity to obtain a temporary injunction on August 17.

25. Plaintiffs filed their Motion to Extend the TRO. Dkt 7-9. Defendant Facility Corporation did not respond or object to Plaintiffs' Motion to Extend the TRO. Indeed, Defendant Facility Corporation's lawyer of record at the time <u>consented</u> to the Federal Court TRO Extension. Now, Defendant Facility Corporation, working in concert with Defendant Theta, wants to change its position on the TRO and it wants to withdraw its consent and make arguments that it could have made in response to Plaintiffs' Motion to Extend.

26. Defendant Facility Corporation's gamesmanship is the opposite of judicial efficiency and unnecessarily runs up all parties' attorneys' fees and wastes the Court's time, and violates the FRCP.

**Defendant Facility Corporation is Estopped from Filing the Motion to Dissolve**

27. This is not a situation where there was no notice to Defendant Facility Corporation. The state court TRO was granted 22 days ago. Per the local state court rules, Defendant Facility Corporation received two hours' notice of a hearing <u>before</u> the state court TRO hearing commenced. Defendant Facility Corporation's attorney appeared and argued at the TRO hearing in state court.

28. At the state court TRO hearing, counsel for Defendant Facility Corporation stated that:

> "We are in line with the injunctive relief sought. We are ready, willing, and able to provide the housing that's available to SMU students, including the girls who are members, arising sophomores [of Thea] to fulfill the requirements as part of the SMU student obligations and provide that through a service plan . . . and so, to the extent that Defendant Facility Corporation is involved we are in line with the injunctive relief. And we are ready and capable of providing the housing."

July 27 Trans. pg. 12 line 22 through 24.

29. In addition, at the state court TRO hearing Defendant Facility Corporation counsel stated:

> "This case we are so close to the date of starting school, and we have -- some of these girls have already signed these license agreements so on behalf of the housing corp, it is, you know our interests to simply honor these and let the girls move in."

July 27 Trans. pg. 30 line 18 through 23.

30. Thus, 22 days ago Defendant Facility Corporation admitted that the injunctive relief in the state court TRO should be granted -- and <u>agreed</u> to that injunctive relief.

31. While it's certainly Defendant Facility Corporation's prerogative to change its mind and make a 360° about face, it should not do so as a last minute tactical ploy to *manufacture* an alleged emergency that does not exist. It's important to note that if a true emergency exists, it is an emergency of *Defendant Facility Corporation's <u>own making</u>* because <u>it</u> changed <u>its</u> mind <u>at the eleventh hour</u>. And, it changed its mind after one court and three sets of attorneys spent extensive time in state court with two long hearings, drafting and re-drafting the TRO order, answering written discovery and producing documents on an expedited basis, and one court and three sets of lawyers spent time on multiple motions and briefs regarding the Federal Court TRO Extension.

32. It's untrue and it's wrong for Defendant Facility Corporation's new lawyer to claim Defendant Facility Corporation's <u>only</u> lawyer of record at the time, did not consent. The second lawyer was not on that call. And, the "proofs in the pudding," the first lawyer agreed to the substance of the prior state court TRO. And, if Defendant Facility Corporation did not consent, why didn't its first <u>or</u> second lawyer immediately file notice with the court that Defendant Facility Corporation did not consent to granting of the Federal Court TRO Extension? Instead, Defendant Facility Corporation waited more than 30 hours to deny that it had consented to the Federal Court TRO Extension.

33. Defendant Facility Corporation's statement that Kent Krause did not consent is absolutely false. Kent Krause consented in a telephone call with both Rogge Dunn and Greg McAllister.

34. The fact that Defendant Facility Corporation wants to change its mind and hire new counsel does not alter the fact that Defendant Facility Corporation absolutely consented to the state court TRO 22 days ago (its lawyer signed the Order "agreed as to form and substance") and consented to the TRO in Federal Court.

35. Indeed, if Defendant Facility Corporation thought its counsel wrongfully consented to the Federal Court TRO Extension, Defendant Facility Corporation had notice of the fact that its lawyer had consented to the Federal Court TRO Extension on August 16 at 4:53 p.m. when Plaintiffs filed their emergency motion for entry of Federal Court TRO Extension.

36. Despite Defendant Facility Corporation having that notice, it did not file its Motion to Dissolve until more than 30 hours later (11:48 p.m., August 17).

37. Under these circumstances, where Beta Sigma admitted that a TRO should be granted on July 27, 2022 and "agreed" to the substance of the TRO Order on July 31. During the next 22 days never indicated it was against the thought that the TRO was improper or should be dissolved, it is waived its right to object to the TRO.

> MS. ANDERSON: "I can go briefly just on behalf of the housing corporation, the facility corporation, that controls the property where the Theta House is located. We're an adverse party in this situation; however, we are in line with the injunctive relief sought. We are ready, willing, and able to provide the housing that's available to SMU students, including the girls who are members or rising sophomores to fulfill their requirement as part of the SMU student obligations and provide that through the service plan. We have been in active communications with the SMU students that are involved and have, you know, essentially told them we're not able to confirm their ability to live in a house until this investigation and the decision from National has been decided.
>
> And so, to the extent that the Beta Sigma Facility Corporation is involved, we are in line with the injunctive relief. And we are ready and capable of providing the housing."

(July 27 hearing trans. pg 12 line 18 through pg. 13 line 11).

> THE COURT: "If Paragraph 19 comes into play, because the chapter

> has been disestablished or ceases to be recognized, it <u>allows</u> <u>the</u> <u>Facility</u> <u>Corporation</u> <u>to</u> <u>continue</u> <u>to</u> <u>lease</u> <u>the</u> <u>premises</u> and to the students."

(July 27 TRO Hearing trans. pg. 30 line 5 through line 9) (emphasis added).

> MS. ANDERSON: "It may be helpful. So the <u>Facility Corporation owns the property</u> but does have an agreement with SMU <u>to provide housing</u> specific to SMU students; first, to those who are in the Theta organization. And if the people cannot fulfill the requirement for whatever reason, then it goes to SMU students. That's the underlying agreement between the housing corp and SMU. However, this case we are so close to the date of starting school and we have--some of these girls have already signed these license agreements. So on behalf of the housing corp, it is, you know, our interest to simply <u>honor these</u> and let these girls move in. And if it's--you know, we have additional rooms available, offer those to additional SMU students perhaps, but at the very least, <u>for the girls who signed these license agreements</u> or who had plans to live in the house, you know, we stand ready to <u>honor our obligations</u> on that end."

(July 27 TRO Hearing trans. pg. 30 line 10 through pg. 31 line 3) (emphasis added).

## CONCLUSION

38. Now, less than 48 hours before the Jane Does are scheduled to move into their on-campus housing, Defendant Facility Corporation wants to "whipsaw" these college students again without adequate time for full briefing and presentation of affidavits or other evidence. The Jane Does are entitled to the relief already granted by two courts. Any "emergency" was manufactured by Defendants' tactical gamesmanship.

Respectfully submitted,

*[signature]*

ROGGE DUNN
State Bar No. 06249500
Email: Dunn@trialtested.com

GREG McALLISTER
State Bar No. 24071191
Email: McAllister@roggedunngroup.com

ROGGE DUNN GROUP, PC
500 N. Akard Street, Suite 1900
Dallas, Texas 75201
Telephone: (214) 888-5000

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

This certifies that a true and correct copy of the above and foregoing instrument was served on the Parties' counsel of record pursuant to the Rules, on this 18th day of August, 2022 via ECF.

*[signature]*

ROGGE DUNN
GREG McALLISTER