UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JANE DOES 1–9 and PARENT DOES 1–5, | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Action No. 3:22-cv-1782 |
| KAPPA ALPHA THETA FRATERNITY INC.; BETA SIGMA FACILITY CORPORATION; BETA SIGMA CHAPTER, | § § § § § § | |
| *Defendants*. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the plaintiffs' emergency motion to remand this case to state court. [Doc. No. 4.] Because the defendants have failed to establish by a preponderance of the evidence that this case meets the jurisdictional amount in controversy requirement, the Court **GRANTS** the motion. This case is **REMANDED** to County Court at Law No. 1 of Dallas County, Texas. The Court's prior order extending the state court's temporary restraining order at Doc. No. 10 is **DISSOLVED**.

### I.  Background

The plaintiffs are nine students at Southern Methodist University and five parents of those students. The defendants are Kappa Alpha Theta Fraternity, Inc. ("Theta National"); Beta Sigma Facility Corporation ("Facility Corp."); and Beta Sigma Chapter—which the Court will refer to collectively as "the sorority." The

1

plaintiffs allege that in February 2022 they signed housing agreements with the sorority, and that the sorority promised to provide on-campus housing at the sorority house beginning on August 20, 2022.

In the summer of 2022, the sorority told the plaintiffs that their spots at the sorority house may not be available and encouraged the plaintiffs to find alternative housing. In response, the plaintiffs filed suit against the sorority in Dallas County Court on July 26, alleging breach of contract, fraud and/or fraudulent inducement, negligent misrepresentation, promissory estoppel, and money had and received. The plaintiffs allege that the sorority repeatedly represented to them that they could live at the on-campus sorority house and that Southern Methodist University requires them to live on-campus for two years. They also allege that on-campus housing is at capacity.

The plaintiffs also sought a temporary restraining order against the sorority, which the state court granted. The state court found that the sorority had entered into a valid contract with the plaintiffs to provide housing to them, and that the plaintiffs would suffer irreparable harm absent a temporary restraining order. So, the state court enjoined the sorority and all of its agents from "1. Not providing residential housing to the Student Does [Jane Does 1–9] at the house located at 3108 University Boulevard, Dallas, Texas 75205; and 2. Assigning or transferring the rights of the Student Does [Jane Does 1–9] to reside at 3108 University Boulevard, Dallas, Texas 75205." The state court entered the temporary restraining order on

July 31, 2022, which was set to expire on August 17, 2022 at 2:00 pm—when the state court was to hold a hearing on the plaintiffs' request for a temporary injunction.

But the sorority had other plans. On August 15, it removed the case to this Court on the basis of diversity jurisdiction. On August 16, the plaintiffs filed two motions: an emergency motion for a temporary restraining order and an emergency motion to remand.

On August 17, the Court granted the plaintiffs' motion for a temporary restraining order and extended the state court's temporary restraining order through the earliest of "(a) the Court's ruling on the plaintiffs' emergency motion to remand, (b) the expiration of the fourteenth day following issuance of [that] Order, or (c) the Court's ruling on the plaintiffs' application for a preliminary injunction."[1] The Court extended the temporary restraining order pursuant to Federal Rule of Civil Procedure 65.

On August 17 and 18, the parties filed a horde of documents and motions. On August 18 at 3:00 pm, the Court held a telephonic hearing. The Court informed the parties that it would first rule on the motion to remand, because this motion involved whether the Court has any jurisdiction over this case. And the Court stated only then would it turn to the motion to dissolve the temporary restraining order. Accordingly, the Court invited the defendants to file a response to the plaintiffs' motion to remand by 7:00 pm CST on August 18 because the Court intended to rule on that motion by 10:00 am CST on August 19. Defendant Facility Corp. filed a response. [Doc. No.

---

[1] Doc. No. 10 at 6.

3

23.] So did defendant Theta National. [Doc. No. 25.] Although the defendants argue that there is diversity of citizenship because (they say) two defendants were fraudulently or improperly joined, the Court need not address that argument because the Court concludes that the amount in controversy—diversity jurisdiction's other requirement—is not met.

## II. Governing Law

Theta National removed this case, asserting that the Court has diversity jurisdiction under 28 U.S.C. § 1332. A federal court has diversity jurisdiction over civil cases in which the amount in controversy exceeds $75,000, exclusive of interests and costs, and in which diversity of citizenship exists between the parties.

Under 28 U.S.C. § 1446(c)(2) and "[f]or diversity purposes, the amount in controversy normally is determined by the amount sought on the face of the plaintiff's pleadings, so long as the plaintiff's claim is made in good faith."[2] "Removal is thus proper if it is 'facially apparent' from the complaint that the claim or claims asserted exceed the jurisdictional amount."[3] So, the first step is to look at the state court petition and see if it is facially apparent that the amount of damages sought exceeds $75,000.[4] If the state court petition "does not state the dollar amount of damages sought, [then] courts analyze the notice of removal."[5] "Where the notice of removal

---

[2] *Butler v. Fitflop USA, LLC*, No. 3:21-CV-1644-L, 2022 WL 912690, at *2 (N.D. Tex. Mar. 29, 2022) (Lindsay, J.) (citing *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87–88 (2014)).

[3] *Id.* (quoting *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995)).

[4] *Moore v. Gladiator Events, LLC*, No. 3:15-CV-01877-M, 2015 WL 5459625, at *1 (N.D. Tex. Sept. 15, 2015) (Lynn, J.).

[5] *Id.*

alleges an amount in controversy, and the amount is not contested, courts accept the removing party's allegation."[6]

Where, as here, the parties dispute the notice of removal's purported amount in controversy, then removal is proper "on the basis of an amount in controversy asserted by the defendant if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" $75,000.[7] To do so, the defendant must submit "summary-judgment-type" evidence.[8] Finally, "[a]ny doubts as to the propriety of the removal should be construed strictly in favor of remand."[9]

### III. Analysis

The state court petition does not specify an amount in controversy, besides saying that "the amount in controversy does not exceed $75,000."[10] Other than several prayers for injunctive relief, the petition states that the plaintiffs seek some form of "damages" and attorney's fees—but the petition does not specify the amount.[11] Therefore, it is not facially apparent that the amount in controversy exceeds $75,000.[12]

---

[6] *Id.*

[7] *Dart Cherokee Basin Operating Co.*, 574 U.S. at 88 (cleaned up).

[8] *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) (cleaned up).

[9] *Butler*, 2022 WL 912690, at *3 (citing *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002)).

[10] Doc. No. 1-5 at 4.

[11] *See, e.g., id.* at 17, 18, 19, and 25.

[12] *See Moore*, 2015 WL 5459625, at *1.

5

Because the petition alone cannot answer the amount in controversy question and because the parties dispute the notice of removal's assertions, the defendants have the burden of providing summary-judgment-type evidence showing that it is more likely than not that the jurisdictional threshold is met.

Defendant Theta National's first piece of evidence is the plaintiffs' "Room Rental License" fees and deposits.[13] Theta National explains that "[a]ll of the nine student Plaintiffs, along with their parents, allegedly signed a 'Room Rental License' that required an annual license fee of $6,014.20, an annual boarding fee of $8,007.30, and a $745 deposit, for a total of nearly $15,000 per plaintiff"[14] and "amounting to $135,000 collectively".[15] As evidence of these amounts, Theta National cites the plaintiffs' exhibits to the state court petition.

The Supreme Court held in *Hunt* that "[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."[16] "Here, that object is the right of the individual" student plaintiffs to live in the former sorority house "free from the interference" of the defendants.[17] "The value of that right is measured by the losses that will follow from" the defendants refusing to let the student plaintiffs live in the

---

[13] Doc. No. 1 [Notice of Removal] at 4.

[14] *Id.*

[15] Doc. No. 25 at 8.

[16] *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977).

[17] *Id.*

former sorority house.[18]  The Court is satisfied that Theta National has shown by a preponderance of the evidence that each individual plaintiff's potential losses (if they are not granted the injunctive relief they seek) is valued approximately at $15,000.

However, the defendants do not get to aggregate the plaintiffs' potential losses in order to reach the jurisdictional minimum.  "Aggregation has been permitted only (1) in cases in which a single plaintiff seeks to aggregate two or more of his own claims against a single defendant and (2) in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest."[19] This isn't a single-plaintiff case so the first example doesn't apply.  And the plaintiffs here have separate Room Rental Licenses (and thus separate titles and rights) so the second example also doesn't apply.

Therefore, the defendants have established by a preponderance of the evidence that the amount in controversy is $15,000.  The question now is whether they can show $60,000 more to reach the $75,000 threshold.  And that brings us to Theta National's second piece of evidence,[20] which is the plaintiffs' plea for attorney's fees on their breach of contract claims.[21]  Defendant Facility Corp. also argues that attorney's fees support the jurisdictional threshold.[22]

---

[18] *Id.*

[19] *Snyder v. Harris*, 394 U.S. 332, 335 (1969).

[20] Doc. No. 1 at 4.

[21] Doc. No. 1-5 at 17, 18, and 19.

[22] Doc. No. 23 at 6.

"When a statutory cause of action entitles a party to receive attorneys' fees, the amount in controversy includes those fees."[23] So what are those fees in this case? The defendants have provided precisely zero summary-judgment-type evidence to tell the Court the answer. They submitted no affidavits or exhibits showing what a typical lawyer would do in a case such as this, or how much time she would spend doing it, or how much she would charge her client.

But the show ain't over, because Facility Corp. has a third piece of evidence: the entire value of Facility Corp.'s indebtedness—$5,100,000.00—which is secured by the former sorority house. Its argument goes like this: If Facility Corp. is compelled to provide housing to the plaintiffs, it would be in breach of its agreements with both Southern Methodist University and Theta National. If Facility Corp. breaches its agreements with those parties, they could terminate Facility Corp.'s rights to continued possession and management of the former sorority house and Theta National could take control of Facility Corp.'s assets. The value of the assets, indebtedness, and facility is $5,100,000.00. Therefore, Facility Corp. concludes that the "value of the object of the litigation" is over $75,000.00.[24]

The Court rejects Facility Corp.'s argument. First, Facility Corp.'s argument is extremely attenuated. The object of the plaintiffs' litigation is not Facility Corp.'s property. It is not Facility Corp.'s assets. It is not Facility Corp.'s indebtedness, nor is it the ground lease that Facility Corp. has with Southern Methodist University and

---

[23] *H & D Tire & Auto. Hardware, Inc. v. Pitney Bowes Inc.*, 227 F.3d 326, 330 (5th Cir. 2000).

[24] *Hunt*, 432 U.S. at 347.

Theta National. The object of the plaintiffs' litigation is the enforcement of a right which they believe that they already have, namely, to live at the former sorority house. That's why the Court agrees with Theta National that the object of the litigation is roughly valued at $15,000, how much each plaintiff would lose if her right weren't enforced.

Second, in light of the foregoing, the Court has doubts that (highly attenuated) potential losses, which would be suffered exclusively by a defendant, can contribute to the amount in controversy. In the injunctive-relief case upon which Facility Corp. relies, *Hunt*, the Supreme Court described only the losses of the plaintiffs—the losses that give rise to the controversy—as supporting the jurisdictional threshold.[25] In other words, the amount in controversy is not about the fallout that might happen after a case is decided. It's about what the plaintiffs want at the beginning of a case. To be fair, Facility Corp. is aggregating in this context similar to how the Supreme Court aggregated in *Wickard v. Filburn* in the commerce clause context (growing wheat in your own backyard for your own personal consumption aggregates to substantially affecting interstate commerce). But the Supreme Court has not adopted similar logic for aggregating for the purposes of establishing federal diversity jurisdiction. And this Court will not do so.

---

[25] *Id.* at 347–48. *See, e.g.*, *id.* at 347 ("Here the record demonstrates that the [plaintiff] growers and dealers have suffered and will continue to suffer losses of various types."); *id.* at 348 ("[T]he statute deprived the [plaintiff] growers and dealers of their rights to utilize most effectively the Washington State grades . . . .").

9

The defendants have failed to show by a preponderance of the evidence, with summary-judgment-type evidence, that the amount in controversy exceeds $75,000.

The remaining question is what to do with the temporary restraining order that this Court has in place. In that temporary restraining order, the Court stated that it would expire at "the earliest of (a) the Court's ruling on the plaintiffs' emergency motion to remand, (b) the expiration of the fourteenth day following issuance of this Order, or (c) the Court's ruling on the plaintiffs' application for a preliminary injunction."[26] The Court has now granted the motion to remand, concluding that it lacks jurisdiction. Although the plaintiffs have requested this temporary restraining order to continue in effect for two business days, principles of state sovereignty and limited federal jurisdiction compel the Court to dissolve the extension of the state court temporary restraining order that it put in place on August 17.

## IV. Conclusion

The Court **GRANTS** the plaintiffs' emergency motion to remand. This case is **REMANDED** to County Court at Law No. 1 of Dallas County, Texas. The Court's prior order extending the state court's temporary restraining order is **DISSOLVED**.

**IT IS SO ORDERED** this 19th day of August, 2022.



BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[26] Doc. No. 10 at 6.